UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division


| | | |
|---|---|---|
| TAMMY GRAVER LANGENSTEIN | ) | |
| 1513 West Beverly Street | ) | |
| Staunton, VA 24401 | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| Citicorp North America, Inc. | ) | |
| 399 Park Avenue | ) | |
| New York, NY 10022 | ) | |
| **Serve:  The Corporation Trust** | ) | |
| **300 E. Lombard Street** | ) | |
| **Baltimore, MD 21202** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Citicorp, Inc. | ) | |
| 14700 Citicorp Drive | ) | |
| Hagerstown, MD 21742 | ) | |
| **Serve: The Corporation Trust** | ) | |
| **300 E. Lombard Street** | ) | |
| **Baltimore, MD 21202** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Jeff Latta | ) | |
| 14700 Citicorp Drive | ) | |
| Hagerstown, MD 21742 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| The Wackenhut Corporation | ) | |
| 4200 Wackenhut Drive, #100 | ) | |
| Palm Beach Gardens, FL 22410 | ) | |
| **Serve:  The Prentice-Hall** | ) | |
| **Corporation System** | ) | |
| **7 St. Paul Street, #1660** | ) | |
| **Baltimore, MD 21202** | ) | |

```
                                          )
          and                             )
                                          )
Greg Cole                                 )
13024 Pennsylvania Ave.                   )
Hagerstown, MD 21742                      )
                                          )
                 Defendants               )
```

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Tammy Graver Langenstein by and through her attorney, Samuel M. Shapiro and the Law Offices of Samuel M. Shapiro, P.A. and sues the defendants, Citicorp North America, Inc., Citicorp, Inc., Jeff Latta, The Wackenhut Corporation and Greg Cole and for cause, states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter and all parties pursuant to Title 28, §§ 1331, 1332, and 1343 of the United States Code.

2. Venue is proper as the events involved in the Complaint occurred in Hagerstown, Maryland.

### PARTIES

3. Plaintiff, Tammy Graver Langenstein (hereinafter "Langenstein") is an adult citizen who resides at the above address.

4. Citicorp North America, Inc. (hereinafter "North America") is a Delaware corporation doing business in Maryland. North America operates a credit card facility in Hagerstown, Maryland located at 14700 Citicorp Drive. In that capacity, they contracted with defendant The Wackenhut Corporation (hereinafter "Wackenhut") to provide security

services for its Hagerstown credit card processing facility. This contractual relationship entailed ultra hazardous activity and was a non-delegable duty by North America.

5. Citicorp, Inc. (hereinafter "Citicorp") is a New York corporation doing business in Maryland. Citicorp operates a credit card facility in Hagerstown, Maryland located at 14700 Citicorp Drive. In that capacity, they contracted with defendant Wackenhut to provide security services for its Hagerstown credit card processing facility. This contractual relationship entailed ultra hazardous activity and was a non-delegable duty by Citicorp.

6. Defendant, J. Latta (hereinafter "Latta") was an agent, servant and employee of either defendant North America and/or Citicorp involved in security at its facility in Hagerstown, Maryland. In that capacity he was involved in the hiring, training, supervision and retention of Wackenhut employees at the facility in Hagerstown, Maryland.

7. The Wackenhut Corporation is a Florida corporation doing business in the State of Maryland. Wackenhut is licensed by the State of Maryland and its actions, inactions, and activities are performed and carried out under color of law.

8. G. Cole (hereinafter "Cole") was an agent, servant and employee of Wackenhut, doing business by and on behalf of Wackenhut pursuant to its contract with North America and/or Citicorp at its Hagerstown facility. Included in the duties of Cole on behalf of Wackenhut for Citigroup was the hiring, training, supervision and retention of all employees working at the Hagerstown facility. It was also among Cole's duties and responsibilities to make sure that the said facility was safe and secure for business

3

invitees on the premises and to be sure that the facility did not become hazardous to the health and wellbeing of business invitees.

**FACTS COMMON TO ALL COUNTS**

9.  Plaintiff adopts and incorporates by reference, as if fully set forth herein, all allegations in paragraphs 1 through 8.

10. On or about October 10, 2008 Langenstein was an employee of Cavalier Services, Inc., a cleaning company retained by either North America, Citicorp, and/or Wackenhut to provide cleaning and custodial services to the credit card processing facility located at 14700 Citicorp Drive, Hagerstown, Maryland.

11. At that time Philip Edward Mayo, Jr., (hereinafter "Mayo") was a security guard hired by North America, Citigroup, and/or Wackenhut. He was duly licensed by the State of Maryland and/or acting pursuant to the license of one of the three corporate defendants.

12. Among the duties and assignments of Mayo on October 10, 2008 were to provide security to all persons lawfully on the premises, to provide security to the premises, to provide security to the data within the premises and to provide protection to those persons lawfully using the said premises.

13. On October 10, 2008 in direct violation of the aforesaid duties and while within the scope of his employment, or while performing contractual services for one or more of the three corporate defendants, Mayo viciously, violently and deliberately attacked, battered, and raped Langenstein.

14. Before the said vicious, violent and deliberate attack and rape occurred, Mayo locked Langenstein within the monitoring room that she was cleaning, preventing any attempt to escape or to seek assistance in warding off the attack and rape.

15. The said attack and rape constituted a battery perpetrated upon Langenstein.

16. Before Mayo was hired by Wackenhut, North America and/or Citigroup to work at the credit card processing facility, Wackenhut's Chief of Security advised defendant Cole, who was under the direction and control and/or coordinated hiring with defendant Latta, that Mayo was one of the correctional officers dismissed by the State of Maryland due to the use of excessive force on inmates at the Hagerstown State Prison facility.

17. Mr. Latta was advised that he should not hire Mayo.

18. Thereafter, the Wackenhut Chief of Security spoke with various Hagerstown prison facility officials and even more strongly advised defendant Cole that he should not hire Mayo.

19. Despite these pre-hiring warnings and in total disregard thereof, Mayo was hired and commenced working at the processing facility.

20. Once hired, Chief of Security for Wackenhut noted that Mayo had a propensity to seek out female employees. One such female employees was defendant Latta's administrative assistant who complained to the Chief of Security that Mayo was "hitting on her". This conduct included coming to her office and on at least one occasion touching her inappropriately.

21. Once having received these complaints, Wackenhut's Chief of Security reported the conduct to both defendants Latta and Cole.

22. The only action taken by either defendant Latta and/or Cole was to advise Mayo to leave the premises at the completion of his shift.

23. Defendant Latta advised Wackenhut's Chief of Security, over his objection to merely advise Mayo this conduct was not acceptable.

24. In addition to the aforesaid, the Wackenhut Chief of Security was advised that the cameras in the monitoring room were in an abnormal position when Mayo left the room where the cameras were housed at the completion of his shift. The cameras were focused on the woman's locker room entry/exit door and on the walkway exterior to building number 2 which housed the locker room.

25. This camera position would allow observation of female employees accessing building 2 in order to work out in the gymnasium.

26. In July, 2008 the Chief of Security for Wackenhut was advised by his daytime supervisor that a North America and/or Citigroup employee was being stalked by Mayo when she came into the facility to use its Wellness Center.

27. The Wackenhut Chief of Security confirmed the above inappropriate conduct by Mayo.

28. When confronted about his actions and conduct, Mayo stated that he didn't know that he couldn't go into the women's locker room but felt it was fine as long as he announced himself.

29. Mayo was admonished about this conduct and agreed not to do it again.

30. The aforesaid information was conveyed to defendant Latta by Wackenhut's Chief of Security. The said Chief of Security indicated that this was an ideal opportunity to terminate Mayo. Defendant Latta responded by indicating that Mayo was performing

better and deserved a chance. The Chief of Security was advised to talk to Mayo regarding sexual harassment.

31. The Chief of Security advised defendant Cole of Mayo's conduct and received no instructions nor was there any reaction to the information.

32. Following the aforesaid Mayo conduct, the Chief of Security for Wackenhut produced a written policy regarding male security employees entering the women's locker room.

33. At approximately the same time, the Chief of Security was advised by an employee of Cavalier Services, Inc. that Mayo was accessing the women's locker room. He would first announce himself and then enter.

34. On August 6, 2008 defendant Cole visited the site and he and the Chief of Security counseled Mayo regarding his actions. In August and September defendants Latta and Cole met with the Wackenhut Chief of Security and eventually over his strong objection, not only did not terminate Mayo, but promoted him.

35. Sometime in August or September, one of the Wackenhut supervisors at the facility learned that Mayo had worked at a Staples in Hagerstown, Maryland as a second job and had been dismissed for inappropriately touching a female employee under the age of eighteen.

36. Upon information and belief, on at least two occasions before October 10, 2008 defendant Latta had advised defendant Cole that he no longer wanted a certain Wackenhut employee working at the processing center due to inadequate performance. Thereafter, the Wackenhut employee was either terminated or transferred.

37. On October 10, 2008 Langenstein was buzzed into the security room where Mayo began touching her, abusing her, forcing her head against the wall, fondling her and eventually raping her.

38. On October 28, 2008 after an investigation and various interviews, Mayo was arrested.

39. Subsequent thereto Mayo was charged in a seven count information.

40. On May 21, 2009 the State of Maryland, through the Assistant State's Attorney for Washington County accepted a plea of guilty by Mayo to assault in the second degree and he was sentenced to the Division of Corrections for five years with the sentence being suspended in lieu of the 205 days he had already served awaiting trial.

41. The plea agreement was not a reflection of the merits of the case but was because of the condition of the victim, Langenstein, and her physical and emotional health.

**COUNT I**
(42 U.S.C. §1983)

42. Plaintiff adopts and incorporates by reference, as if fully set forth herein, all allegations contained in paragraphs 1 through 41.

43. The acts of defendants Wackenhut and Cole constituted conduct under color of State law which deprived plaintiff of her rights, privileges, and immunities secured by the Constitution and the laws of the United States.

44. As a direct and proximate result of the conduct alleged herein, all of the defendants deprived the plaintiff of the following clearly established rights under the Eighth Amendment to the United States Constitution, more specifically (a) the right to be free from the use of excessive and unusual force and seizure; (b) the right to be free from the deprivation of life and liberty without due process; (c) the right to be free from cruel

8

and unusual punishment; and (d) the right to be free from deliberate indifference to the vicious and violent battery and rape of the plaintiff by a known violent and sexually aggressive employee/individual.

45. As a direct and proximate result of defendants' Wackenhut and Cole's violations of the Constitutional rights of the plaintiff she sustained bodily injuries, conscious pain, mental anguish, permanent painful injuries, psychiatric injuries and problems, fear, nightmares, flashbacks, embarrassment, shame, humiliation, loss of income and earning capacity, medical expenses, past, present and reasonably expected into the future, an inability to perform and enjoy her normal and usual activities and changes in her relationship with both family members and friends.

WHEREFORE, plaintiff demand judgment against each defendants Wackenhut and Cole jointly and severally in an amount to be determined at trial but not less than $3,000,000.00, plus interest, costs, attorney's fees and punitive damages in an amount to be determined at trial but not less than $3,000,000.00 and such other and further relief as the nature of the case may require and this Honorable Court shall deem just and proper.

## COUNT II
(Violation of Maryland Declaration of Rights Article 24)

46. Plaintiff adopts and incorporates by reference, as if fully set forth herein, all allegations contained in paragraphs 1 through 45.

47. Article 24 of the Maryland Declaration of Rights states:

> That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges or outlawed, or exiled, or in any manner, destroyed, or deprived of his life, liberty, or property, but by the judgment of his peers, or by the law of the land.

48. When Mayo, acting under color of law, used unreasonable, unnecessary and excessive force in his vicious and violent battery and rape of the plaintiff, he thereby injured her as alleged in violation of her rights to due process and to be free from the use of such excessive force as protected by Article 24 of the Maryland Declaration of Rights.

49. Mayo's actions were without provocation or legal justification and were undertaken deliberately and with the intent to violate the plaintiff's civil rights under Article 24 of the Maryland Declaration of Rights to be free from excessive force.

50. All of the actions and conduct of Mayo were committed as an agent, servant and/or employee of Wackenhut and with knowledge and acquiescence of defendant Cole, had knowledge of Mayo's dangerous propensities towards women. Despite this knowledge, neither defendant Wackenhut nor Cole individually and/or jointly did anything to prevent Mayo's inappropriate conduct towards females at the facility.

51. As a direct and proximate result of Mayo's use of excessive force in violation of Article 24 of the Maryland Declaration of Rights the plaintiff suffered bodily injuries, conscious pain, mental anguish, permanent painful injuries, psychiatric injuries and problems, fear, nightmares, flashbacks, embarrassment, shame, humiliation, loss of income and earning capacity, medical expenses, past, present and reasonably expected into the future, an inability to perform and enjoy her normal and usual activities and changes in her relationship with both family members and friends.

WHEREFORE, plaintiff demand judgment against Wackenhut and Cole jointly and severally in an amount to be determined at trial but not less than $3,000,000.00, plus interest, costs, attorney's fees and punitive damages in an amount to be determined at trial

but not less than $3,000,000.00 and such other and further relief as the nature of the case may require and this Honorable Court shall deem just and proper.

**COUNT III**
(Wrongful Hiring, Training, Supervision and Retention)

52. Plaintiff adopts and incorporates by reference, as if fully set forth herein, all allegations contained in paragraphs 1 through 51.

53. Defendants North America, Citicorp, and Wackenhut owed the plaintiff a duty to hire, train, supervise and retain competent employees.

54. Each of the said corporation along with defendants Latta and Cole had a duty not to negligently hire a vicious and violent employee when on notice of these propensities prior to his employment.  All of the defendants had a duty to properly train and supervise Mayo when alerted to his violent propensities and his inappropriate conduct towards females during his working hours. When on notice of these propensities and conduct during his continued employment by all of the defendants. Each of the defendants had a duty when Mayo's inappropriate and illegal conduct continued with their knowledge and understanding to terminate the said Mayo.

55. Mayo, prior to being hired by one or more of the defendants had engaged in violent behavior in violation of civil rights by assaulting, battering, and otherwise abusing Maryland State prisoners. Mayo was discharged by the State of Maryland for the aforesaid misconduct.  Each of the defendants knew or should have know of Mayo's pre-employment history as they had been specifically informed by the Chief of Security for Wackenhut. Moreover, during his employment and prior to his interaction with the plaintiff, the Chief of Security for Wackenhut had repeatedly informed defendants Cole

11

and Latta and through them their employers of Mayo's inappropriate and illegal

conduct.

56. All of the defendants, both corporate and individual, owed the plaintiff a duty that was

non-delegable with regard to the hiring, training, supervision, and retention of Mayo

that they knew would come in contact with females who were lawfully on the property.

57. Despite this knowledge and duty, none of the defendants did anything to prevent Mayo

from viciously, violently and deliberately attacking, battering, and raping the plaintiff.

58. As a direct and proximate result of the improper hiring, training, supervision, and

retention of Mayo, the plaintiff suffered bodily injuries, conscious pain and mental

anguish, permanent painful injuries, psychiatric injuries and problems, fear, nightmares,

flashbacks, embarrassment, shame, humiliation, loss of income and earning capacity,

medical expenses, past, present and reasonably expected into the future, an inability to

perform and enjoy her normal and usual activities and changes in her relationship with

both family members and friends.

WHEREFORE, plaintiff demand judgment against each defendant jointly and severally in

an amount to be determined at trial but not less than $3,000,000.00, plus interest, costs,

attorney's fees and punitive damages in an amount to be determined at trial but not less than

$3,000,000.00 and such other and further relief as the nature of the case may require and this

Honorable Court shall deem just and proper.

**COUNT IV**
(Battery)

59. Plaintiff adopts and incorporates by reference, as if fully set forth herein, all allegations

contained in paragraphs 1 through 58.

12

60. Defendant Mayo's vicious, violent and deliberate, rape of the plaintiff without legal justification constituted a battery.

61. In committing the aforesaid acts, Mayo was acting as an agent, servant, and employee of one or more of the corporate defendants and with knowledge of similar propensities by both of the individual defendants.

62. As a direct and proximate result of the battery by Mayo, the plaintiff suffered bodily injuries, conscious pain and mental anguish, permanent painful injuries, psychiatric injuries and problems, fear, nightmares, flashbacks, embarrassment, shame, humiliation, loss of income and earning capacity, medical expenses, past, present and reasonably expected into the future, an inability to perform and enjoy her normal and usual activities and changes in her relationship with both family members and friends.

WHEREFORE, plaintiff demand judgment against each defendant jointly and severally in an amount to be determined at trial but not less than $3,000,000.00, plus interest, costs, attorney's fees and punitive damages in an amount to be determined at trial but not less than $3,000,000.00 and such other and further relief as the nature of the case may require and this Honorable Court shall deem just and proper.

**COUNT V**
(Intentional Infliction of Emotional Distress)

63. Plaintiff adopts and incorporates by reference, as if fully set forth herein, all allegations contained in paragraphs 1 through 62.

64. Mayo's conduct as set forth was extreme, outrageous, and beyond the bounds of decency.  Specifically, Mayo's vicious, violent, and deliberate attack and rape of the

plaintiff without legal justification was undertaken and permitted by the actions and conduct of all of the defendants.

65. At all times Mayo acted as an agent, servant, and employee of the corporate defendants and with knowledge by the individual defendants of his dangerous propensities towards females lawfully on their premises.

66. As a direct and proximate result of the extreme and outrageous conduct of the defendants, the plaintiff suffered bodily injuries, conscious pain and mental anguish, permanent painful injuries, psychiatric injuries and problems, fear, nightmares, flashbacks, embarrassment, shame, humiliation, loss of income and earning capacity, medical expenses, past, present and reasonably expected into the future, an inability to perform and enjoy her normal and usual activities and changes in her relationship with both family members and friends.

WHEREFORE, plaintiff demand judgment against each defendant jointly and severally in an amount to be determined at trial but not less than $3,000,000.00, plus interest, costs, attorney's fees and punitive damages in an amount to be determined at trial but not less than $3,000,000.00 and such other and further relief as the nature of the case may require and this Honorable Court shall deem just and proper.

**COUNT VI**
(Negligence)

67. Plaintiff adopts and incorporates by reference, as if fully set forth herein, all allegations contained in paragraphs 1 through 66.

68. At all times relevant to the complaint, each of the defendants owed a duty to act in accordance with the applicable standard of care to provide a reasonably safe and secure work environment for the plaintiff to conduct her employment duties and obligations.

69. Defendants breached the applicable standard of care and were negligent in numerous ways, including but not limited to: failing to prevent the brutal attack and rape of the plaintiff; failing to properly monitor Mayo; failing to properly respond to the incident while it was in progress; failing to properly hire, train, supervise and retain Mayo and other deviations from the appropriate standard.

70. As a direct and proximate result of the negligence of any and/or all of the defendants, the plaintiff suffered bodily injuries, conscious pain and mental anguish, permanent painful injuries, psychiatric injuries and problems, fear, nightmares, flashbacks, embarrassment, shame, humiliation, loss of income and earning capacity, medical expenses, past, present and reasonably expected into the future, an inability to perform and enjoy her normal and usual activities and changes in her relationship with both family members and friends.

WHEREFORE, plaintiff demand judgment against each defendant jointly and severally in an amount to be determined at trial but not less than $3,000,000.00, plus interest, costs, attorney's fees and such other and further relief as the nature of the case may require and this Honorable Court shall deem just and proper.

### COUNT VII
(False Imprisonment)

71. Plaintiff adopts and incorporates by reference, as if fully set forth herein, all allegations contained in paragraphs 1 through 70.

15

72. Mayo, while acting with the scope of his employment for the corporate defendants and with knowledge of his dangerous and violent propensities by the individual defendants, intentionally restricted without legal justification, the freedom of movement of the plaintiff who was both aware of and fought this restriction and did not consent thereto. This action and conduct constituted a false imprisonment.

73. As a direct and proximate result of the false imprisonment the plaintiff suffered bodily injuries, conscious pain and mental anguish, permanent painful injuries, psychiatric injuries and problems, fear, nightmares, flashbacks, embarrassment, shame, humiliation, loss of income and earning capacity, medical expenses, past, present and reasonably expected into the future, an inability to perform and enjoy her normal and usual activities and changes in her relationship with both family members and friends.

WHEREFORE, plaintiff demand judgment against each defendant jointly and severally in an amount to be determined at trial but not less than $3,000,000.00, plus interest, costs, attorney's fees and punitive damages in an amount to be determined at trial but not less than $3,000,000.00 and such other and further relief as the nature of the case may require and this Honorable Court shall deem just and proper.

## COUNT VIII
(Failure to Protect)

74. Plaintiff adopts and incorporates by reference, as if fully set forth herein, all allegations contained in paragraphs 1 through 73.

75. Each of the defendants, despite knowledge, warnings, and requests not to hire and to fire Mayo allowed him to remain on the premises and by doing so failed to protect persons who were properly and lawfully on the credit card facility in Hagerstown,

Maryland. Each of the defendants, jointly and severally, owed a duty to protect the plaintiff from a known hazard.

76. In direct violation of the said duty, each of the defendants, jointly and severally failed to protect the plaintiff from a known dangerous person.

77. As a direct and proximate result of this failure to protect plaintiff, she suffered bodily injuries, conscious pain and mental anguish, permanent painful injuries, psychiatric injuries and problems, fear, nightmares, flashbacks, embarrassment, shame, humiliation, loss of income and earning capacity, medical expenses, past, present and reasonably expected into the future, an inability to perform and enjoy her normal and usual activities and changes in her relationship with both family members and friends.

WHEREFORE, plaintiff demand judgment against each defendant jointly and severally in an amount to be determined at trial but not less than $3,000,000.00, plus interest, costs, attorney's fees and punitive damages in an amount to be determined at trial but not less than $3,000,000.00 and such other and further relief as the nature of the case may require and this Honorable Court shall deem just and proper.

**COUNT IX**
(Premises Liability)

78. Plaintiff adopts and incorporates by reference, as if fully set forth herein, all allegations contained in paragraphs 1 through 77.

79. Each of the defendants owed a duty, jointly and severally, to the plaintiff as an invitee to prevent employees to remain on the property who constituted a clear and present threat to the said invitee. Mayo constituted just such a threat to all females on the premises and more specifically, constituted a threat of causing imminent bodily harm to

17

the plaintiff who, in her capacity as a cleaning person, was an invitee onto the said premises.

80. That despite this duty to use reasonable care to maintain a safe premises, the defendants, jointly and severally, allowed a violent individual to be placed in a position where an eventual harm to the plaintiff was known, or reasonably should have been known.

81. As a direct and proximate result of the breach of the aforesaid duty, the plaintiff suffered bodily injuries, conscious pain and mental anguish, permanent painful injuries, psychiatric injuries and problems, fear, nightmares, flashbacks, embarrassment, shame, humiliation, loss of income and earning capacity, medical expenses, past, present and reasonably expected into the future, an inability to perform and enjoy her normal and usual activities and changes in her relationship with both family members and friends.

WHEREFORE, plaintiff demand judgment against each defendant jointly and severally in an amount to be determined at trial but not less than $3,000,000.00, plus interest, costs, attorney's fees and punitive damages in an amount to be determined at trial but not less than $3,000,000.00 and such other and further relief as the nature of the case may require and this Honorable Court shall deem just and proper.

**JURY DEMAND**

The plaintiff demands a jury trial as to all claims.


Respectfully submitted,

SAMUEL M. SHAPIRO, P.A.


/s/Samuel M. Shapiro
Samuel M. Shapiro #00688
200-A Monroe Street, #233
Rockville, MD 20850
(301) 340-1333
(301) 340-1149 fax
Rogah@aol.com

Attorney for Plaintiff